UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 05-159 (JRT/FLN)

           Plaintiff,

       v.                                    **REPORT AND RECOMMENDATION**

Patrick Donald Hott,
Frederick James Moore,

           Defendants.

_____

Erica H. MacDonald, Assistant United States Attorney, for Plaintiff.
Charles L. Hawkins, for Defendant Hott.
Craig E. Cascarano, for Defendant Moore.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 15, 2005, on Defendants' Motions to Suppress Evidence Obtained through Illegal Search and Seizure [#27; #39]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends Defendants' Motions be denied.

## I. FINDINGS OF FACT

Defendants Patrick Donald Hott and Frederick James Moore have been charged with Conspiracy to Distribute, and Distribution of Methamphetamine. See Indictment [#13].

On April 11, 2005, Investigator Douglas Brunner submitted an Application and Affidavit for Search Warrant for room 542 at the Courtyard Marriot Hotel in Minneapolis, Minnesota. See Gov't Ex. 1, Application and Affidavit for Search Warrant. Brunner has been a police officer for more than five years and is currently employed with the City of New Hope. He has recently been assigned

-1-

as an investigator with the Northwest Metro Drug Task Force.  Id. p. 2.  Brunner has received training in drug interdiction and narcotics investigation from the Minnesota Bureau of Criminal Apprehension, and has had experience in the detection and investigation of illegal drug-related offenses.  He relayed the facts of the investigation of Defendants based on his personal participation in the investigation and information provided by other law enforcement officers who participated in the investigation.  Id.

In the Affidavit, Brunner stated that he had received information in the previous 24 hours from a cooperating defendant ("CD") that Defendant Hott was selling large amounts of methamphetamine.  The CD agreed to assist officers in making a purchase of methamphetamine from Defendant Hott.  Id.

On April 11, 2005, the CD made several phone calls to Hott to arrange the purchase of methamphetamine.  The two agreed to meet at the CD's mother's house.  Members of the Northwest Metro Drug Task Force, the Anoka County Drug Task Force, and the DEA set up surveillance at the residence for the meeting, which occurred that afternoon.  The CD wore a wire, and Investigator Brunner monitored its receiver and recorded the meeting.  During the meeting, Hott stated he was staying at a hotel, and mentioned having up to ten pounds of methamphetamine.  He agreed to meet the CD later that evening to make a deal.  The CD paid Hott $1000 to go toward the purchase of methamphetamine.  Id.

When he left the residence, the surveillance team followed Hott, driving a green SUV, to the Courtyard Marriot in Minneapolis.  Hott went into the hotel, and investigators continued to survey the premises.  Id.

Hott and the CD continued to speak by phone throughout the afternoon to arrange the

purchase.  The phone calls were recorded.  At one point, Hott told the CD to meet him in a parking

lot near the hotel.  The surveillance team saw Hott leave the hotel and drive the same green SUV

into the parking lot.  The team watched as the CD got into Hott's vehicle and exchanged money for

a package of suspected methamphetamine.  The suspected methamphetamine field-tested positive

and weighed approximately 225 grams.  The CD was searched before and after every meeting with

Hott.  Id. p. 2-3.

After the exchange, officers moved in to arrest Hott.  Hott fled in his vehicle and a pursuit

followed.  Hott was eventually apprehended and a hotel key was found on his person.  The key was

for the Courtyard Marriott located in Minneapolis, and was found to open room 542.  Id. p. 2

Investigators had earlier found room 542 to be registered to Defendant Moore.  Per

information provided by the CD, Moore was involved in the sales of methamphetamine with Hott.

Moore was detained after he was seen leaving room 542.  Id. p. 3.

Investigator Brunner requested a narcotics canine to check for narcotics on the fifth floor of

the hotel.  Minnesota State Patrol Trooper Schneider responded to the hotel with his canine partner

Xena, a USPCA regional narcotics certified canine.  The two searched the fifth floor for narcotics,

and Xena indicated the presence of narcotics in room 542.  Id.

Based on this information, Brunner stated he had probable cause to believe that Defendant

was selling methamphetamine, and requested the court's permission to search room 542 of the

Courtyard Marriott in Minneapolis.  He requested permission to seize particular evidence, including:

controlled substances and all items used for the manufacture, distribution or consumption thereof;

papers that indicated the renter or occupant of the premises; monies and statements maintained or

received through the distribution of controlled substances; records indicating the presence of a

separate storage facility for the preservation of controlled substances or other property gained through the distribution of controlled substances; all photos and records related to or documenting the distribution of controlled substances; and all firearms related to criminal activity. Id.

Brunner further requested that the court permit a nighttime search. Brunner stated that the length of the investigation and pursuit of Hott necessitated that the warrant be signed after daytime hours. Because of the possibility that other individuals would go to the hotel and room to remove objects or that other suspects would be tipped off, Brunner stated that officers needed to search the hotel room as soon as possible. Id.

Brunner obtained the search warrant, which permitted a nighttime entry, on April 11, 2005, from Hennepin County District Court Judge Tanya Branford. The Police Evidence Receipt indicates that eleven items were recovered in relation to the investigation, including packaging material and plastic bags, Moore's cellular phone, Hott's fold-out knife, containers with covers, a scale, and marijuana paraphernalia. Id. p. 4-5.

Defendants move to suppress the evidence obtained as a result of search and seizure. Defendants challenge the search warrant on its four corners, alleging it was issued without a sufficient showing of probable cause.[1] For the reasons that follow, the Court recommends that Defendants' motions to suppress be denied.

## II. CONCLUSIONS OF LAW

### A.    There Was Probable Cause to Issue the Search Warrant

---

[1]

In their Motions, Defendants also argue evidence should be suppressed because the warrantless search of Defendants and their personal belongings were without probable cause and illegal, and because the warrants were illegally executed. Additionally, Defendant Hott argues that the search of his vehicle was without valid consent or probable cause. See Def. Motions [#27; #39]. At the suppression hearing Defendants made no argument regarding these assertions and the Government represented that at trial, it intended to offer only evidence recovered pursuant to the search warrant. Thus, the sole issue before the Court is whether the evidence seized pursuant to the search warrant is admissible.

-4-

Defendant challenges the search warrant on its four corners, alleging that it was issued without probable cause. Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. Illinois v. Gates, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). A court does not evaluate each piece of information independently, but rather considers all of the facts for their cumulative meaning. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Gates, 462 U.S. at 238; see also United States v. Salter, 358 F.3d at 1080, 1084 (8th Cir. 2004).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court had a substantial basis for concluding that probable cause existed. United States v. Oropesa, 316 F.3d 762, 766 (8th Cir. 2003) citing Gates, 462 U.S. at 238-39. Because reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the magistrate's determination is accorded great deference. U.S. v. Wajda, 810 F.2d 754, 760 (8th Cir. 1987) citing United States v. Leon, 468 U.S. 897, 914 (1984).

In this case, the Court finds that the information provided by the CD was substantially corroborated, and that the contents of the search warrant application and affidavit provided probable cause for the search of the hotel room. See e.g., United States v. Olson, 21 F.3d 847, 850 (8th Cir.

-5-

1994) (CRI information was reliable where independent investigation of the task force agents corroborated CRI information). The affidavit included information that Defendants were involved in the sale of controlled substances from room 542. The surveillance team recorded the conversations and meetings between the CD and Hott, in which Hott agreed to sell the CD methamphetamine. The team observed Hott and Moore exit the hotel room on April 11, and observed the CD receive methamphetamine from Defendant Hott in exchange for money. Affiant Brunner stated that the room 542 was registered to Defendant Moore, and that the certified narcotics canine indicated that the room contained narcotics.

Given the information in the affidavit, a reasonable person could conclude that evidence of Defendants' alleged narcotics dealings would be found in room 542. Under the totality of the circumstances, the issuing judge had a substantial basis for concluding that probable cause existed to issue the search warrant for the hotel room. Defendants' motions to suppress the warrant for lack of probable cause should be denied.

### B.    The Warrant Was Properly Issued as a Nighttime Entry Warrant

Federal law allows nighttime searches if the judge who issues the warrant has probable cause to believe that drugs will be on the property when it is searched. See 21 U.S.C. § 87; Gooding v. United States, 416 U.S. 430, 458 (1974); see also United States v. Appelquist, 145 F.3d 976, 978 (8th Cir. 1998) (the necessity of nighttime searches is considered under the same framework as that used to consider the necessity of unannounced entries). A nighttime search conducted by state law enforcement officers does not offend any federal interest when it is clearly valid under federal law. Appelquist, 145 F.3d at 978.

In this case, the issuance of a nighttime entry warrant did not violate the Fourth Amendment.

-6-

As set forth above, the issuing judge had probable cause to believe drugs would be found at the hotel room. The affidavit including specific information regarding the need for a nighttime entry and the Court is convinced the issuing judge satisfied her duty to determine whether the facts and circumstances justified dispensing with the daytime entry requirement. See United States v. Weeks, 160 F.3d 1210, 1213 (8th Cir. 1998) citing Richards v. Wisconsin, 520 U.S. 385, 395 (1997). The warrant properly permitted a nighttime entry.

### C.    The Search Warrant Described with Adequate Particularity the Items to be Searched and Seized

Under the Fourth Amendment, a search warrant must be sufficiently definite to allow those who execute the warrant to identify the property to be seized with some particularity. See United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001). The particularity requirement ensures that the search will be carefully tailored to is justifications, and will not take on the character of a wide-ranging exploratory search. Maryland v. Garrison, 480 U.S. 79, 84 (1987). The particularity requirement is examined under a standard of practical accuracy rather than a hypertechnical one. United States v. Mosby, 101 F.3d 1278, 1281-82 (8th Cir. 1996). If the search warrant authorizes the seizure of property involved in the defendant's commission of crimes, the warrant is adequately specific. See Tyler, 238 F.3d at 1039; United States v. Stelten, 867 F.2d 446, 450 (8th Cir. 1989). In deciding whether a warrant has met the particularity requirement, the court must read the list of items to be seized in the context of all the language in the warrant and must consider the total circumstances surrounding the case and the issuance of the warrant. See Milliman v. State of Minnesota, 774 F.2d 247 (8th Cir. 1985); United States v. Caves, 890 F.2d 87, 92 (8th Cir. 1989).

In this case, the warrant authorized the search of room 542 of the Courtyard Inn. The

application included the specific address of the hotel, and relayed the grounds on which to search the room, including that Defendants maintained illegal substances there. The application set forth the items related to Defendants' alleged illegal activity that were likely to be found in the room. The warrant authorized the seizure of controlled substances, paraphernalia, records, and valuables reasonably believed to have been purchased with the proceeds of the alleged controlled substance transactions. Each of the items listed in the warrant related to the suspected narcotics trafficking described in the supporting affidavit.

The Court is satisfied that the warrant adequately specified the place to be searched and the items to be seized, and ensured that the police seized only evidence related to the suspected criminal activity. The search warrant was also supported by adequate probable cause and the evidence found as a result of the search of the hotel room is admissible. Defendants' Motions to suppress such evidence should be denied.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motions to Suppress Evidence Obtained through Illegal Search [#27; #39] should be **DENIED.**


DATED: June 30, 2005                              s/ *Franklin L. Noel*
                                                  FRANKLIN L. NOEL
                                                  United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 15, 2005** , written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to ten pages.

A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 15, 2005** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.